WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Midtown Hotel Group LLC, | No. CV-22-01395-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Selective Insurance Company of America, et al., | |
| Defendants. | |

Pending before the Court are Defendant The Hartford Steam Boiler Inspection and Insurance Company's ("Hartford") Motion to Dismiss for Failure to State a Claim, (Doc. 8), and Plaintiff Midtown Hotel Group, LLC's ("Midtown") Motion for Leave to Amend its complaint (Doc. 21). The Court now rules.

**I.    BACKGROUND**

This action was filed in Arizona Superior Court in Maricopa County and removed to federal court based on diversity jurisdiction. It involves a dispute between an insurer, Defendant Selective Insurance Company of America ("Selective") and its policyholder, Midtown, over the type and extent of repairs and payments warranted under an insurance policy after an air-conditioning system malfunctioned and flooded the hotel covered by the policy. (*See* Doc. 1-3 at 2–7). In its complaint Midtown alleged breach of contract and bad faith breach of the implied covenant of good faith and fair dealing. (*Id.* at 7–9). Midtown named Selective as its insurer and Hartford as an "additional insurer" under its policy with Selective. (*Id.* at 4).

Hartford filed a motion to dismiss for failure to state a claim, stating that it was not an additional insurer of Midtown but rather Selective's reinsurer,[1] and pointing out that it was not a party to the policy. (Doc. 15-1 at 4–6). Hartford argued that, because it was not a party to the contract between Selective and Midtown, Hartford had no contractual duty toward Midtown which it could have failed to perform, tortiously or otherwise. (*Id.* at 8–10). Midtown then filed its motion for leave to amend its complaint. (Doc. 21).

Midtown's proposed first amended complaint ("PFAC") adds a claim against Hartford for aiding and abetting Selective's alleged bad faith breach, identifies Hartford as a reinsurer rather than an additional insurer, and adds references to the reinsurance agreement where the first complaint referred only to the insurance policy. (*Compare* Doc. 21-1 *with* Doc. 1-3). The PFAC alleges that at the time of the air conditioner malfunction the property was insured by Selective, and that under a reinsurance agreement Hartford was obliged to pay some or all of Midtown's damages. (Doc. 21-1 at 4). The PFAC further alleges that Hartford acknowledged coverage of the claim, that Defendants appointed a Hartford employee to be Midtown's primary point of contact regarding the claim, and that Hartford controlled decisions regarding payment and settlement of the claim. (*Id.* at 5). The PFAC then alleges that Defendants performed an inadequate investigation, have refused to pay major portions of the claim (including lost business income owed to Midtown) without adequately explaining their refusal, and that Defendants know or should know that such refusal was unjustified given the damage to the property and recognized hotel industry revenue projections (*Id.* at 5–7).

Count One of the PFAC alleges breach of contract, asserting that "Defendants have failed to perform their obligations pursuant to the Policy and/or Reinsurance Agreement. . . . thereby depriving Plaintiff of benefits it was to have received" under those contracts. (*Id.* at 8–9). Count Two of the PFAC alleges that despite "one or both of the Defendants" being obliged under "the Policy and the Reinsurance agreement" to pay Midtown, Defendants have refused to adjust and negotiate the claim fairly and in good faith, and have

---

[1] (Doc. 15-1; Doc. 36 at 7). Reinsurance is essentially insurance for insurance companies. Steven Plitt, et al., Couch on Insurance § 9:1 (3d ed. 2022).

acted in their own interests at Midtown's expense in breach of their "contractual and/or quasi-fiduciary" obligations. (*Id.* at 10–11). Count Three alleges that Hartford, through its agents and employees, aided and abetted Selective's bad faith by "attempting to . . . 'lowball'" Midtown's claim by failing to conduct a prompt, adequate, or competent investigation, by failing to provide a reasonable inspection of the property and a reasonable assessment of damages and needed repairs, and by failing to promptly pay Midtown for its claim. (*Id.* at 11–12).

## II.   LEGAL STANDARD

Leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a). Such leave should be denied only if "the pleading could not possibly be cured by the allegation of other facts," or conversely should be granted whenever "it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (first quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); then quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)). But leave to amend "need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## III.   ANALYSIS

Midtown argues that leave to amend should be granted because its PFAC properly alleges breach of contract, bad faith, and aiding and abetting claims against Hartford. (Doc. 21 at 3–6). Hartford opposes the motion, arguing that leave to amend should be denied because the PFAC fails to state a claim against Hartford upon which relief can be granted, and amendment would therefore be futile. (Doc. 32 at 1–2). The Court will consider each of Midtown's claims against Hartford in turn, considering whether Midtown's pleading of each claim could possibly be cured (to the extent it is infirm) by the allegation of other facts.

### a. Breach of Contract

Midtown argues that its PFAC properly alleges a breach of contract claim because Midtown may be a third-party beneficiary of the reinsurance agreement, the reinsurance agreement might give Midtown direct rights against Hartford, or such rights may have been implied by Hartford's direct handling of the claim. (*See* Doc. 21 at 3 n.1).

At first glance the PFAC does not clearly allege that Midtown had a direct agreement with Hartford of the sort that would entitle it to a remedy sounding in contract. (*See* Doc. 21-1 at 8–9). But Midtown could, consistent with Arizona law, potentially allege facts allowing it to proceed against Hartford for breach of contract on at least two different theories. First, Midtown could possibly allege facts allowing it to maintain a breach of contract claim on a third-party-beneficiary theory. In Arizona, a person may recover as a third-party beneficiary of a contract where (1) "an intention to benefit that person" is "indicated in the contract itself," (2) the "contemplated benefit" is "both intentional and direct," and (3) it "definitely appear[s] that the parties intend to recognize the third party as the primary party in interest." *Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 885 P.2d 1113, 1117 (Ariz. App. 1994). Put somewhat differently, the last element requires that "the third person must be the real promisee. The promise must be made to him in fact although not in form and it is not enough that the contract may operate to his benefit." *Basurto v. Utah Constr. & Mining Co.*, 485 P.2d 859, 863 (Ariz. App. 1971) (citation omitted).[2]

Second, Midtown could allege facts showing that the reinsurance agreement itself expressly permits direct actions by certain of Selective's policyholders against Hartford. *Leal v. Allstate Ins. Co.*, 17 P.3d 95, 99 ¶ 21 (Ariz. App. 2000) (citing *Scroggins v. Allstate Ins. Co.*, 393 N.E.2d 718, 721 (Ill. App. Ct. 1979)).

Hartford argues that "Midtown is unable to prove the necessary elements of breach of contract against HSB with regard to the Reinsurance Agreement because Midtown is

---

[2] On this Court's quick review, although Midtown alleges in the PFAC that it was deprived of benefits it should have received under the reinsurance agreement, it is not readily apparent that Midtown has adequately alleged that it is the intended primary beneficiary of the reinsurance agreement. (*See* Doc. 21-1 at 8–9).

not a party to the Reinsurance Agreement." (Doc. 32 at 3). As discussed, Midtown in some circumstances could maintain an action for breach of contract without being a party to that contract. And in any case, because Hartford has not disclosed the reinsurance agreement and moved for summary judgment, this Court would be obliged to take as true on a motion to dismiss any well-pleaded allegations Midtown chooses to make regarding the contents of the reinsurance agreement. Thus, granting leave to amend would not necessarily be futile as regards the breach of contract claim against Hartford.

### b. Bad Faith

Midtown argues that its PFAC properly alleges a bad faith claim against Hartford. Hartford argues that Midtown's claim for bad faith must fail because it has no contractual relationship with Hartford. The Court finds that Midtown could possibly allege facts that would allow it to maintain a bad faith claim directly against Hartford, and that amending its complaint would therefore not necessarily be futile.

First, as discussed, Midtown could allege facts showing that it is a third-party beneficiary of the reinsurance agreement. Arizona has recognized bad-faith liability in tort arising from a third-party-beneficiary contractual relationship in multiple insurance contexts. See *Rowland v. Great States Ins. Co.*, 20 P.3d 1158, 1167 ¶ 28 (Ariz. App. 2001) (recognizing a third-party beneficiary bad-faith claim in a worker's compensation context); *Fobes v. Blue Cross & Blue Shield of Ariz. Inc.*, 861 P.2d 692, 695–698 (Ariz. App. 1993) (recognizing the possibility of a third-party beneficiary bad-faith claim in a health insurance context). Thus, granting leave to amend would not be futile because an amendment properly alleging that Midtown is a third-party beneficiary would allow it to maintain a bad-faith claim against Hartford.

Second, contractual privity is not always necessary to the maintenance of a bad-faith claim where the alleged tortfeasor managed and controlled the insurance claim on behalf of the insurer, particularly where requiring privity would "deprive a plaintiff from redress against the party primarily responsible for damages." *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 730–31 (Ariz. 1991) (quoting *Delos v. Farmers Ins. Co.*, 155

Cal. Rptr. 843, 849 (Cal. Ct. App. 1979); *and see Temple v. Hartford Ins. Co. Midwest*, 40 F. Supp. 3d 1156, 1166–67, 1169 (D. Ariz. 2014); *Lipsky v. Safety Nat'l Cas. Corp.*, No. 1-CA-CV 15-0337, 2017 WL 443525, at *1–6 ¶¶ 1–2, 38 (Ariz. App. Feb. 2, 2017); *Bennett v. Ins. Co. of Pa.*, No. 1 CA-CV 10-0815, 2012 WL 424913, at *1, 3 ¶¶ 1, 12 (Ariz. App. 2012); *Gorczyca v. Am. Fam. Mut. Ins. Co.*, No. CV 09-412-PHX, 2009 WL 10673446, at *2–4 (D. Ariz. May 20, 2009). *But see Walter v. Simmons*, 818 P.2d 214, 222–23 (Ariz. 1991); *Goldberg v. Pac. Indem. Co.*, No. CV 05-2670-PHX, 2008 WL 508495, at *1, 3 (D. Ariz. Feb. 21, 2008). Because, as discussed, the relationship between the parties remains unclear due to the secrecy of the reinsurance agreement, Midtown could possibly allege facts which would give rise to direct liability against Hartford on a bad faith breach of contract theory. Amendment would therefore not necessarily be futile with respect to Midtown's bad faith claim against Hartford.

### c. Aiding and Abetting

Midtown argues that its PFAC properly alleges a claim against Hartford for aiding and abetting Selective's alleged bad faith. Aiding and abetting in Arizona "require[s] proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Loc. No. 395 Pension Tr. Fund.*, 38 P.3d 12, 23 ¶ 34 (Ariz. 2002) (citation omitted). Hartford argues that amendment would be futile because Midtown's allegations are too conclusory to adequately plead how Hartford allegedly has knowledge that Selective's actions constituted bad faith. (*See* Doc. 32 at 7).

The Court is not persuaded by Hartford's argument. For Hartford not to know that the alleged actions forming the basis of the bad faith claim were tortious, Hartford must either (1) not have known that the actions were taken, or (2) have known the actions were taken but not have known they constituted a breach of Selective's duty. In almost every instance the PFAC alleges that the actions forming the basis of the bad faith claim were

undertaken either by both defendants, by Hartford, or by Hartford's agents. (*See* Doc. 21-1 at 4–12). In other words, Midtown alleges that each action taken by Selective in breaching its duty was also taken by Hartford. This Court has no difficulty concluding that Hartford plausibly had knowledge of actions that Hartford itself took jointly and simultaneously with Selective.[3] Further, as Midtown alleges in the PFAC that Hartford is "engaged in the business of insurance in . . . Arizona," the Court would have no difficulty inferring from the PFAC, even had Midtown not also alleged it, that Hartford "understood the duties owed by an insurance carrier such as itself and Selective," and therefore also understood that the actions it allegedly took jointly with Selective were tortious. (*Id.* at 2, 11–12).

It is true that the Court has several times found Arizona law to require that, where the acts constituting an insurer's bad faith are performed by a claims adjuster, to properly state a claim for aiding and abetting a plaintiff must allege a separate act by the adjuster which aids and abets an act by the insurer. *Jones v. Colo. Cas. Ins. Co.*, No. CV 12-1968-PHX, 2013 WL 4759260, at *2–5 (D. Ariz. Sept. 4, 2013) (Finding that the alleged aider-and-abettor "could not have known about conduct that did not exist."); *Young v. Liberty Mut. Grp.*, No. CV-12-2302-PHX, 2013 WL 840618, at *2–4 (D. Ariz. Mar. 6, 2013); *Ortiz v. Zurich Ams. Ins. Co.*, No. CV-13-02097-PHX, 2014 WL 1410433, at *3–6 (D. Ariz. Apr. 11, 2014). On this Court's quick review, due to the ubiquitous use of the collective term "Defendants" in the PFAC it is not immediately clear whether the PFAC adequately alleges that Hartford took a distinct action that aided and abetted a separate action taken by Selective.

However, both the Arizona Court of Appeals and courts in this district have come to differing conclusions in considering whether an adjuster can aid and abet an insurer where the actions of the adjuster substantially overlap with those alleged as the basis of the bad faith claim against the insurer.[4] To the extent these cases are reconcilable, their

---

[3] *Cf.* Restatement (Second) of Torts § 876 cmt. d, illus. 6 (Am. L. Inst. 1965) ("A and B are members of a hunting party. Each of them in the presence of the other shoots across a public road at an animal, which is negligent toward persons on the road. A hits the animal. B's bullet strikes C, a traveler on the road. A is subject to liability to C.").

[4] *Chukly v. Am. Fam. Mut. Ins. Co.*, No. CV-17-0088-TUC, 2017 WL 5952759, at *3–4 (D. Ariz. June 17, 2017) (citing *Bennett*, 2012 WL 424913, at *8; *Lipsky*, 2017 WL

differing dispositions indicate that their outcomes may have tightly turned on fine factual distinctions. Thus, even very small changes in the facts plaintiff alleges have the potential to cure any infirmities in the PFAC. For example, it appears possible that Midtown could amend its complaint to clarify that certain tortious actions were taken separately by one defendant or the other, or to specify which portions of an action alleged to have been done jointly and simultaneously were performed by which defendants. The Court therefore does not find that granting leave to amend the complaint would necessarily be futile with respect to Midtown's aiding and abetting claim against Hartford.

Because amendment would not be futile and would serve "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities," *Lopez*, 203 F.3d at 1127, the Court will grant leave to amend. In amending its complaint Midtown is not limited to filing the PFAC but may make other amendments as it wishes with the benefit of the above-cited cases. Assuming that Midtown will take advantage of this opportunity and amend its complaint, the Court will also deny Hartford's motion to dismiss as moot.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** granting Midtown's motion for leave to amend its complaint (Doc. 21). Midtown may file an amended complaint within 30 days. Midtown is <u>not</u> limited in filing its amended complaint to the amendments indicated in the proposed amended complaint (at Doc. 21-1). If Midtown does make further amendments, it must also file a document indicating any differences between the complaint and the amended complaint.

---

443525, at *7; *Young*, 2013 WL 840618, at *3; *Jones*, 2013 WL 4759260, at *3; *Ortiz*, 2014 WL 1410433, at *3–5; *Lemaster v. Hartford Ins. Co. Midwest*, No. CV-13-02017-PHX, 2016 WL 705125, at *10 (D. Ariz. Feb. 23, 2016); *Lambert v. Liberty Mut. Fire Ins. Co.*, No. 14-cv-00521, 2014 WL 5432154, at *3 (D. Ariz. 2014); *Rosso v. Liberty Ins. Co.*, CV-16-00860-PHX, 2016 WL 4013614, at *2–3 (D. Ariz. July 27, 2016); *Inman v. Wesco Ins. Co.*, No. CV-12-02518-PHX, 2013 WL 2635603, at *2–3 (D. Ariz. June 12, 2013); *Wilson v. Accident Fund Gen. Ins. Co.*, No. 13-cv-2012, 2013 WL 6670330, at *2–3 (D. Ariz. Dec. 18, 2013); *Haney v. Ace Am. Ins. Co.*, No. CV-13-02429-PHX, 2014 WL 1230503, at *4–5 (D. Ariz. Mar. 25, 2014); *Temple*, 40 F. Supp. 3d at 1170).

**IT IS FURTHER ORDERED** that if Midtown timely files the amended complaint permitted herein, each defendant shall answer or otherwise respond to the amended complaint within 14 days of when it is filed.

**IT IS FURTHER ORDERED** that Hartford's motion to dismiss Midtown's complaint (Doc. 8) is denied as moot. In the event that Midtown does not timely file an amended complaint Hartford's motion to dismiss will again be deemed pending.

Dated this 19th day of December, 2022.

James A. Teilborg
Senior United States District Judge