**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Midtown Hotel Group LLC, | No. CV-22-01395-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Selective Insurance Company of America and Hartford Steam Boiler Inspection and Insurance Company, | |
| Defendants. | |

Pending before the Court is the parties' joint discovery dispute (Doc. 126) regarding Plaintiff's request for Defendants to produce documentation reflecting the bonus and/or incentive programs and communications to employees regarding such programs for the Defendants' casualty and property insurance departments from 2015 to 2019. (Doc. 126 at 2).

Defendants argue that Plaintiff is not entitled to the documentation because *Zilisch v. State Farm Auto. Ins. Co.*, 995 P.2d 276 (Ariz. 2000), and its progeny are distinguishable from the case at hand. According to Defendants, the *Zilisch* "plaintiffs alleged institutional or corporate practices constituting bad faith, which provided the courts' justification for allowing discovery of historical institutional claims practices and operational goals," (Doc. 126 at 3), and Plaintiff does not do so here.

Having reviewed the case law relied on by Plaintiff, the Court does not agree with Defendants' contention that this case is distinguishable from the cases cited. In *Zilisch*, the

Arizona Supreme Court affirmed the trial court's entry of judgment for the plaintiff in part because of evidence in the record that the insurer engaged in a practice where "[t]he salaries and bonuses paid to claim representatives were influenced by how much the representatives paid out on claims." 995 P.2d at 280. However, despite the evidence introduced at trial of the institutional practices of the insurer in *Zilisch*, the underlying claim was that of bad faith for denial of plaintiff's individual claim—the same as the present case. *Id.* ("Zilisch brought this bad faith tort action against [the insurer] alleging it breached its duty of good faith and fair dealing by deliberately refusing to pay the policy limits of her UIM claim when it knew the claim exceeded that amount.") The Arizona Supreme Court included the evidence that the insurer engaged in institutional practices of incentivizing employees to pay out less on claims among other evidence specific to the individualized claim at hand. *Id.* In other words, the fact that there was evidence the insurer in *Zilisch* had engaged in institutionalized bad faith served as supporting evidence for the individualized claim, not as a claim itself. The other cases cited by Plaintiff hold true to the same concept. *See, e.g.*, *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co*, No. CV–12–02444–PHX–JWS, 2014 WL 4259485 at \*4 (D. Ariz. 2014) (finding evidence that an insurer motivated its employees to minimize overpayments as relevant to showing that the insurer "may have been motivated to under-report [plaintiff's] damages" in his individualized bad faith claim); *Leavey v. UNUM/Provident Corp.*, No. CV–02–2281–PHX–SMM, 2006 WL 1515999 at \*5 (D. Ariz. 2006) (same).

The Court also does not agree with Defendants that Plaintiff's request is overly broad, irrelevant, or not limited to information that may have actually affected its claim. Regarding breadth, five years is a reasonable time period to discover whether incentive structures had influence over claim payments. As for relevance, "[e]vidence regarding whether Defendants 'set arbitrary goals for the reduction of claims paid' and whether '[t]he salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims' is relevant to whether Defendants acted unreasonably and knew it." *Ingram v. Great Am. Ins. Co.*, 112 F. Supp. 3d 934, 940 (D. Ariz. 2015)

(quoting *Zilisch*, 995 P.2d at 280). If Plaintiff intends to use the requested documentation as part of a theory that Defendants acted knowingly unreasonable in denying Plaintiff's claim in accordance with institutional bad faith practices, the documentation would be relevant to that theory. While the information may not all ultimately be admissible, it is at least discoverable at this juncture. *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, at 801–02 (2021) ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . . [C]ourts are quick to point out that discovery is concerned with relevant information—not relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance.") (footnotes and internal quotation marks omitted).

Accordingly, based on the foregoing,

**IT IS ORDERED** that Defendants' objections are overruled. To the extent Doc. 126 seeks to compel production of the evidence discussed herein, Doc. 126 is granted. Defendants must provide this information (to the extent each Defendant has responsive information) within fourteen (14) days of the date of this Order.

Dated this 4th day of December, 2023.

_____
James A. Teilborg
Senior United States District Judge